## WILLIAM M. WAIT *v.* DUNCAN C. GREEN.

A Court of Special Sessions, held under the act of 1857, ch. 769, § 1 (3 *R. S.,* 5*th ed.,* 1000), has no jurisdiction of a charge of "malicious mischief."

G., a justice of the peace, issued a warrant for the arrest of W., on a charge that he "did willfully and maliciously unhook the traces of the harness on a span of horses, and then hitched to the wagon, then owned or in the possession of one L." W. was arrested under the warrant, and tried before G. at a Court of Special Sessions, and convicted of the offense charged, which was recited in the warrant and in the commitment in the words above quoted, and was held in custody under the commitment until discharged on *habeas corpus.* *Held,* that G. acted without jurisdiction, and was liable to an action for false imprisonment for the arrest.

*Held,* also, that on the trial of the action for false imprisonment, it was not competent for G. to prove that it was shown before the Court of Special Sessions that L. was in the wagon at the time the traces were unhooked, for the purpose of establishing an assault on L., and thus showing jurisdiction in the court, there being no such offense charged in the warrant or commitment.

The willful trespasses over which jurisdiction is given to courts of Special Sessions, by the act of 1857, ch. 769, § 1 (3 *R. S.,* 5*th ed.,* 1000), do not include cases of "malicious mischief;" they refer only to such willful trespasses upon real estate as are made indictable and punishable as misdemeanors by statute.

A malicious act, however wanton or dangerous, which does not result in any destruction or even injury to property, does not amount to the misdemeanor known as "malicious mischief."

THIS was an action for false imprisonment. The defendant, who was a justice of the peace, justified under proceedings before him as a Court of Special Sessions.

The action was tried at the Dutchess Circuit.

It appeared on the trial that on the 22d day of March, 1860, the plaintiff was arrested on a warrant, of which the following is a copy:

"*Town of Pawling, Dutchess county, ss:* To any constable of the said county: Whereas Daniel Luddington hath this day made complaint upon oath before me, Duncan C. Green, one of the justices of the peace of the said town, that on the 30th day of April, one thousand eight hundred and fifty-nine,

at the town of Pawling, in the said county, one Wm. M. Wait did willfully and maliciously unhook the traces of the harness on a span of horses, and then hitched to the wagon then owned or in possession of said deponent, therefore the People of the State of New York command you forthwith to apprehend the said William M. Wait and bring him before me, to be dealt with as the law directs. Dated the 20th day of March, 1860.

         DUNCAN C. GREEN, *Justice of the Peace.*"

The warrant had been issued on the following affidavit:

"*State of New York, Dutchess county, ss:* Daniel Luddington being duly sworn, doth depose and say, that on the 30th day of April, one thousand eight hundred and fifty-nine, at the town of Pawling, in said county, one Wm. Wait did willfully and maliciously unhook the traces of the harness on a span of horses, and then hitched to the wagon then owned or in possession of said deponent; wherefore this deponent prays that the said offender may be dealt with according to law.

         DANIEL LUDDINGTON.

Sworn before me this 20th
   day of March, 1860,
         DUNCAN C. GREEN, *Justice.*"

The trial took place before the defendant, holding a Court of Special Sessions, on the 24th day of March, 1860, when the following commitment was issued:

"*State of New York, Dutchess county, ss:* To any constable of the said county, greeting: At a Court of Special Sessions duly held by the undersigned, a justice of the peace of the said county, this 24th day of March, 1860, at his office in the town of Pawling, in said county, William M. Wait was brought before the said court, charged on oath of Daniel Luddington with having on the 30th day of April, 1859, at the town of Pawling, in said county, willfully and maliciously unhooked the traces of the harness on a span of horses, and then hitched to the wagon then owned or in the possession of said Luddington, which charge being stated in the warrant by me issued, was distinctly read to the defendant in open court,

Wait *v.* Green.

to which he pleaded not guilty. Whereupon such proceedings were had in said court that the defendant was convicted of the charge above specified, and the court having rendered judgment thereon that said William M. Wait should pay a fine of ($8.00) eight dollars, and the said Wait having refused to pay said fine, therefore the People of the State of New York command you to convey the said William M. Wait to the common jail of the said county, the keeper whereof is hereby required to keep him in safe custody in the said jail until the judgment so rendered be satisfied, or he be discharged by due course of law.

Witness my hand, this 24th day of March, 1860.

DUNCAN C. GREEN, *Justice of the Peace.*"

Under this commitment, the plaintiff was arrested and brought to Poughkeepsie, and kept in custody until discharged on the same day, on a writ of *habeas corpus.*

It was proved that the plaintiff paid his counsel five dollars for his services in procuring his discharge. This evidence was objected to by the defendant, and its admission excepted to.

A motion for a nonsuit was made and refused, and the defendant excepted.

The defendant was then called as a witness, and testified that he was a justice of the peace, residing in the town of Pawling, in the county of Dutchess. That Daniel Luddington made the complaint before him on which the warrant was issued.

That it was proven before the defendant at the time, before the warrant was issued, that the plaintiff unhooked the traces of the harness on a pair of horses belonging to Luddington, in the night time, when said Luddington was in a wagon, to which the horses were hitched, driving the same at the depot. That Wait admitted on the trial that he did unhitch the traces, as claimed by Luddington. The evidence as to what was proved on the issuing of the warrant, and on the trial, was objected to by the plaintiff's counsel, and received subject to exception.

It appeared that on the trial before the Court of Special Sessions, Wait presented a paper containing written objections to the proceeding, in which he asked to be discharged on the grounds:

1st. That the court had no jurisdiction of the case, or of the person of Wait, as there was no offense alleged in the warrant, and it did not show that any crime had been committed.

2d. That to constitute malicious mischief or injury, it must be done out of malice to the person, and to his damage. That unless there was actual injury committed, there was no crime.

3d. That a Court of Special Sessions had no jurisdiction to try any offenses, except those enumerated in Session Laws of 1857, 2d vol., p. 705.

The court, afterwards, on motion, ordered all the testimony of Green, as to what was proved before him at the time of issuing the warrant, and on the trial before the Court of Special Sessions, to be struck out of the case, to which the defendant's counsel excepted.

The court charged the jury that there was no authority to make the arrest, that the false imprisonment was established, and the only question for the jury was, the amount of damages which the plaintiff should recover.

The jury rendered a verdict for the plaintiff for fifty-two dollars and fifty cents, and the case was brought before the general term, on an application for a new trial.

*J. F. Barnard,* for the defendant.

I. An attempt, with force or violence, to do a corporeal injury, is an assault, and may consist of any act tending to such injury. There need not be a direct attempt at violence. (*Hays* v. *The People,* 1 *Hill R.,* 351.)

Striking a horse on which plaintiff's wife was riding, and starting a squib which was thrown from hand to hand until it struck a person, held in both cases assault and battery. (2 *Petersdorf Abr.,* tit. *Assault and Battery.*)

Wait *v.* Green.

II. A court holding jurisdiction of all criminal cases is protected if it judges that criminal which is not. (3 *Cowen & Hill's Notes, vol.* 2, *note* 993, *and cases there cited.*)

III. Malicious mischief is a misdemeanor, punishable at common law, and is defined to be an act injurious to private persons, committed through a spirit of wanton cruelty or revenge, which tend to create resentments. (4 *Black. R.,* 243; *Barb. Cr. Law,* 208.)

IV. Justices of the peace can issue criminal warrants in all criminal cases. (2 *R. S.,* 706, *sec.* 1.)

After arrest he must hear charge read and demand examination in misdemeanors, and if, after prosecutor and witnesses are examined, he be held and offer no bail, he shall be committed to jail. (2 *R. S.,* 709, *sec.* 26.)

The officer granting writs of *habeas corpus* to disregard irregular commitments, and, if no bail be offered, to remand. (2 *R. S.,* 568, *sec.* 43.)

V. If the offense charged is an assault, then the justice had jurisdiction to try.

If the justice erroneously held it to be an assault, it cannot be reviewed collaterally.

If the offense was malicious mischief, the justice had jurisdiction of the offense, and the arrest was legal, and the defendant in warrant (plaintiff) could not be discharged, except by offer of bail or discharge by the justice. The discharge of plaintiff is void, for want of jurisdiction in him, and the plaintiff is yet in custody under the justice's commitment.

VI. The justice who heard the action erred in admitting evidence of money paid by plaintiff upon *habeas corpus* proceedings, it not having been specially stated in complaint. (*Strong* v. *Whitehead,* 12 *Wend. R.,* 64.)

*H. A. Nelson,* for the plaintiff.

I. Neither the complaint, warrant or commitment sets forth any criminal offense. (2 *R. S.,* 711, § 1; *Laws of* 1857, *vol.* 2, *p.* 705.)

The judge was right in striking out the evidence. All

the defendant claimed in his answer was, that a complaint was made to the defendant, as a magistrate, that a criminal offense had been committed, "to wit, a malicious trespass," and this was the only issue to be tried. And the defendant, on the trial, did not ask to have the answer amended.

The charge.did not come within any of the provisions of the statute making certain trespasses misdemeanors. (2 *R. S.*, 693.)

II. The cause of action was fully established, and there was no question of fact to be passed upon by the jury, except as to the amount of plaintiff's damages. (3 *Phil. Ev.*, 515, 4*th Am. ed.;* 1 *Bald. R.*, 571, 600; *Percival* v. *Jones*, 2 *Johns. Cas.*, 49; *Reynolds* v. *Orvis*, 7 *Cow. R.*, 269; *Taylor* v. *Trask, Id.,* 250, 251; *Perry* v. *Mitchell*, 5 *Denio R.*, 537; *Curry* v. *Pringle*, 11 *Johns. R.*, 444; *Bigelow* v. *Stearns*, 19 *Id.*, 39; *Vredenburgh* v. *Hendricks*, 17 *Barb. R.*, 179.

III. Plaintiff was entitled to recover the amount he necessarily paid in regaining his liberty. Such expenses were sufficiently averred in the complaint. Defendant not having asked that plaintiff make the allegation more definite and certain, could not object on the trial. (12 *Wend. R.*, 64; *Code*, § 160.)

*By the Court*, EMOTT, J. This was an action for false imprisonment, tried before me at the Dutchess Circuit. The plaintiff was arrested on a warrant issued by the defendant, who was a justice of the peace, and, although objecting to the jurisdiction, was tried, convicted and sentenced by a Court of Special Sessions, held by the defendant, to a fine, and to be imprisoned until it was paid. He was released upon *habeas corpus*, and subsequently brought this action.

The warrant of arrest and the commitment recited the offense to be, that the prisoner, the present plaintiff, "did willfully and maliciously unhook the traces of the harness on a span of horses *and then hitched* to the wagon then owned or in the possession of" one Luddington.

At the trial of this action, the imprisonment was defended on the ground that, by the evidence before the magistrate,

Wait *v.* Green.

Luddington was shown to have been in the wagon at the time, and it was contended that the plaintiff had therefore committed an assault, an offense of which a Court of Special Sessions, of course, has jurisdiction. But neither the warrant nor the record of conviction or commitment, specify any such offense as an assault, nor do they state sufficient facts to constitute an assault. The offense for which the plaintiff was tried and convicted was maliciously unhooking the traces from horses, when harnessed to the complainant's wagon. If Luddington, the owner, was in the wagon at the time, the act of the plaintiff was an assault upon him; or if some one else was there, then upon such other person. But no such person was specified, and no such offense was charged in the warrant or commitment; and the plaintiff may have committed the act charged in the warrant and commitment, and still have committed no assault. He could not, however, be arrested, tried and convicted for an act which, if it were an offense, was one of which the court had no jurisdiction, and his imprisonment afterward justified by showing that the evidence at the trial would have convicted him of another offense which was triable in a Court of Special Sessions.

Assuming that a Court of Special Sessions has no jurisdiction to try a man for malicious mischief, or for the act charged in these proceedings, if it were a criminal offense, we are all clearly of opinion that this was a case of false imprisonment; and that evidence of what took place on the trial in the Sessions, tending to make out an assault, was irrelevant, and that it was properly struck out of the case, and excluded from the consideration of the jury. We do not think it necessary to discuss the proposition which was advanced, that inasmuch as the defendant could have arrested the plaintiff and held him to bail for committing an act of malicious mischief, he can therefore justify proceeding to a trial which resulted in a conviction and sentence. We are also of opinion that the evidence which was objected to upon the question of damages, was properly received. The utmost which this objection involves, would be an amendment of the complaint.

These embrace all the questions raised at the trial or on the argument. One of the members of the court, however, has entertained doubts whether Courts of Special Sessions are not authorized to try cases of malicious mischief under the existing statute (2 R. S., 711, § 1; 2 R. S., 5th ed., 1001), and I have, therefore, considered that question. The fifth subdivision of this section of the statute gives to the Special Sessions jurisdiction to try " charges for committing any willful trespass, or for severing any produce or article from the freehold, not amounting to grand larceny." I am unable, after careful consideration, to agree to a construction of this statute which would bring the act charged in the proceedings against the plaintiff within its provisions, for various reasons which seem to me sufficient.

The offense of malicious mischief has been recognized in this State as a misdemeanor at common law, although the multiplicity of the statutes to punish such offenses in England has led to the impression that the offense is created by statute. The language used by Blackstone (4 Black. Com., 243), in the passage cited by the defendant's counsel, to prove that malicious mischief is an offense at common law, would perhaps lead to that conclusion. But the line which separates a mere trespass from a criminal act, has been by no means clearly defined. In The People v. Smith (5 Cow. R., 258), an indictment for maliciously killing a cow was sustained. In Loomis v. Edgerton (19 Wend. R., 419), maliciously breaking to pieces a sleigh was held to be a criminal offense. On the other hand, in Kilpatrick v. The People (5 Denio R., 277), maliciously breaking two windows in the house of another person, was held not to be a criminal offense. In the latter case stress was laid upon the fact that the act complained of was not committed secretly, nor in the night time, and was not an act of cruelty to a domestic animal. In England, as has been already intimated, the limits of this class of offenses, and their punishment, are defined by numerous statutes, so that but few, if any, cases can be found which were decided by the common law. The statutes of Great Britain make many trespasses

Wait v. Green.

criminal offenses, which, without them, would be only wrong-ful acts, to be redressed by damages in a civil action. So there are various statutes with us making certain trespasses punishable criminally. But it is obvious that every trespass is not a criminal offense, although every trespass is in the eye of the law "willful," and even "malicious." Judge BEARDSLEY, in *Kilpatrick* v. *The People*, says, very justly and pointedly, that malice is an ingredient in every intentional wrong, but that even a malicious intent to do an act of injury, without hope or expectation of profit to the wrongdoer, will not make the act indictable. It is quite clear, I think, that there is no such criminal offense at common law as a "willful trespass." Every wrongful act to the person, or personal or real property of another, is a willful trespass, and this, as a generic term, will include all crimes to the person, and some offenses against property. But the term defines a class of wrongful acts merely, and not of crimes. It is not the same as "malicious mis-chief," which describes acts criminal at common law. On the contrary, the two classes of wrongs are plainly and broadly distinguishable. In the clause of the statute now in question, the phrase, willful trespass, does not, therefore, describe any crime, except as such an act is made such by statute. There are certain willful trespasses which are indictable and punish-able, and the present statute refers to these only.

The context and connection of the words in the statute are also sufficient, to my mind, to show that the trespasses referred to are acts of trespass upon lands. The statute confers juris-diction upon Courts of Special Sessions to try various specified acts of wrong to persons and property, which are crimes by common law and by statute, and which would be included within willful trespasses, if that term should be construed in its ordinary or full legal sense. In the clause in question, the word trespass is directly connected with the freehold, in such a way as to show that the meaning of the whole clause is, any willful trespass upon the freehold, or any severance of pro-perty therefrom, which is not a larceny. This is to me the

obvious, and, I believe, has been the universal construction of this part of the statute.

The statute was intended to refer to certain trespasses which are made misdemeanors by the statute of misdemeanors. (2 *R. S.*, 693, § 15.) The language of the latter statute is identical with that before us, describing the offenses referred to as willful trespasses, and all the trespasses which the statute of misdemeanors makes criminal, are trespasses upon real estate. It is these willful trespasses, made criminal by positive statute, which are triable in Courts of Special Sessions, and not a totally different class of acts which might be described as acts of malicious mischief, and which are only criminal when they come within the cases or the definition of acts of malicious mischief, and are thus more than merely willful trespasses.

If, therefore, the act described in this commitment, were an act of malicious mischief at common law, it would not be included within the provisions of this statute, or the jurisdiction which it confers upon Courts of Special Sessions.

But I must add that it is very clear to me that the act specified by the proceedings was not an act punishable criminally as a malicious mischief. Even if it had been committed while the owner of the horses, or any other person was in the wagon, it could hardly have been construed a malicious mischief, because no harm appears to have ensued. It is not alleged that any injury was done to the horses or the wagon, the whole charge being that the harness of the horses was maliciously unhooked. The essence of the crime of malicious mischief, is the injury to property, and this must be marked by some peculiar features to convert it from a trespass into a crime. An act which, however wanton and dangerous, is not, and does not result in the destruction, or even the injury of property, is not an act of malicious mischief or a misdemeanor, under this head of the law.

I am of opinion that the warrant of arrest, and the commitment, recited no offense whatever, and that if any were committed, taking all the facts proved, or alleged to have been proved at the trial before the magistrate, it was a constructive

assault upon the person in the wagon at the time, which was not the offense for which the plaintiff was tried or convicted, and cannot, therefore, justify his imprisonment.

The plaintiff is entitled to judgment upon this verdict, in my opinion, beyond any question.

Judgment for plaintiff.

