The opinion of the Court was delivered by
Inglis, J. The defendant was convicted of malicious trespass under the first section of the Act of 1857, “To make malicious trespasses indictable,” (12 Stat. 605,) in “unlawfully, wilfully, and maliciously” shooting a mare, the property of W.H. Ashmore, on the 17th August, 1866. The section is in these words: “Any person, who shall, wilfully, unlawfully, and maliciously, cut, shoot, maim, wound or destroy, any horse, mule, neat-cattle) hog, sheep or goat, the property of another, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined and imprisoned at the discretion of the Judge before whom the case shall be tried." The various propositions stated in the notice of appeal, as the grounds of the motions in this Court, in arrest of judgment *250 and for a new trial, resolve themselves into the one allegation, that the Act of 1857 was not in force at the time of the trespass committed. If this be so, the motion in arrest of judgment must be granted.
The Act of Assembly, “To amend the Criminal Law,” ratified December 19, 1865, (13 Stat. 276,) in its twenty-first section declares "everj wilful trespass a misdemeanor,” and provides that “any person, guilty thereof, may be either sued for damages, or prosecuted for the misdemeanor, at the option of the party injured, and in case of conviction of the misdemeanor, the punishment shall be a fine apportioned to the ■ damage done and the circumstances of enormity attending ,the trespass, with substitution of other punishment as herein- • after provided, if the fine be not immediately paid.” In a .subsequent section it is provided that, in a case of this kind, the substituted punishment shall be imprisonment at the rate of one day for every dollar of the fine. This statute was in force at the time of the defendant’s trespass, and of the institution of the proceedings against him. The offence described in the first section of the Act of 1857 above recited, if not identical with that described in this Act of 1865, certainly includes it, for every unlawful, wilful, and malicious- shooting, &c., of a horse, &c., the property of another, is certainly a wilful trespass, though it may perhaps include additional elements, which do not necessarily enter into the constitution of a wilful trespass. Its being a “malicious” trespass does not make it the less a “wilful ” trespass. If, therefore, nothing more appeared, and it were conceded that the Act of 1857 was not in force at the time of this trespass, the words of description here might be accepted as sufficiently setting out the offence denounced by the Act of 1865, and the defendant might receive judgment accordingly. Eor certainly the words, although not all necessary for the purpose, substantially describe a " wilful trespass.” But the Act of Assembly “To alter the Act entitled ‘An Act to amend the Criminal *251 Law,” ’ which was ratified December 21st, 1866, in its first section (13 Stat. 405) expressly repeals the former Act of December 19, 1865, “in so far as it is not in the new statute re-enacted.” The only enactment in this last Act (1866) on the subject of trespass is contained in the seventh section, and has respect exclusively to unauthorized entries on the land of another. It is, therefore, clear, that the twenty-first section of the “Act to amend the Criminal Law,” of December 19th, 1865, was repealed, and the distinct statutory offence, in that section described, ceased to exist in law upon the ratification of this new Act. After such ratification, then, the defendant could not be indicted, or if he had been already indicted, could not be tried and punished under the Act of 1865. Unless the Act of 1857 has remained in force, without suspension or interruption from its ratification, or at least was in force on the 17th August, 1866, (when the trespass was committed,) and has since continued so, the defendant was not liable to indictment or conviction at all. And whether it was and has continued so of force is the inquiry which is now to be solved. It is not alleged or suggested that this Act of 1857, “ To make malicious trespasses indictable,” has ever been expressly repealed. The Act of 1865, “To amend the Criminal Law,” has no repealing clause. But it is insisted for the defendant, that the former Act was impliedly repealed by the latter. “ The law does not favor repeal by implication, nor is it to be allowed unless the repugnancy be quite plain.” “It has ever been confined to repealing as little as possible of the preceding statute.” “Although two acts are seemingly repugnant, yet they shall, if possible, have such construction that the latter may not be a repeal of the former by implication.” (Dr. Foster's case, 11 Coke, 63, Bacon’s Abridgment, Statute D.) “ A later statute on a given subject, not repealing an earlier one in terms, is not to be taken as a repeal by implication, unless it is plainly repugnant to the former, or unless it fully embraces the whole subject-matter.” Goddard *252 vs. Boston, 20 Pick. 407. “ Acts in pari materia are to be taken together as one law, and are to be so construed that every provision in them may, if possible, stand. Courts should therefore be scrupulous how they give sanction to supposed repeals by implication.” (Haynes vs. Jacks, 2 Pick. 176.) In order to a repeal of a former statute by implication from the terms of a later, the matter of the latter must be so clearly repugnant to, that it necessarily implies a negation of, the former. (Vide 1 Black. Comm. 89.) From these authorities (and they might be indefinitely multiplied) it results, that a repeal is not to be implied without necessity existing in the terms of the two statutes; that such necessity consists in a repugnance between the two statutes that is susceptible of no reasonable reconcilement; and that if the two can stand together and have room for operation without conflict and inconsistency, they shall do so.
The Act of 1865, “ To amend the Criminal Law,” was not intended, nor does it purport to be a revision of the whole criminal law of the State, or of this special department or title of that law. No argument in favor of the repeal of the Act of 1857 can, therefore, be drawn from the omission of its subject-matter, if it be omitted. But the true inquiry here is, whether the offence described and punished by the terms of the earlier Act is identical with that described in the later ? Do the two comprehend exactly the same legal elements? Are they co-extensive? That they are not co-extensive is of course quite manifest. Every unlawful, wilful, and malicious cutting, shooting, maiming, wounding and destroying of another’s horse, mule, neat-cattle, hog, sheep or goat, is undoubtedly a wilful trespass. But a great many other wrongs are, as well, wilful trespasses, and so subject to the condemnation of the later statute. “Wilful trespass” is a very much more extensive description, and embraces many additional classes or particulars. Regarded simply with reference to extension the later description is generic, the earlier *253 specific. And there is the authority of decided cases for saying that “ a general law does not operate a repeal of a special law upon the same subject passed previous to the general law.” (Macfarland vs. The State Bank, 4 Pike, 410.) Nor are these two descriptions identical in comprehension — they do not involve the same legal elements; that is, neither having more nor less, than the other, of such elements essential to its constitution. The offence described in the earlier statute is a “wilful trespass,” but it is more. An Act maybe unlawful and so involve legal responsibility without being either wilful or malicious, or it may be both unlawful and wilful without being malicious. The three terms are frequently found in statutes, and often all together. The}' constitute an ascending scale in culpability — a legal climax. “Malicious” imports an additional aggravation in guilt and ill-desert in the law’s regard beyond the other two combined. Wilfulness in wronging authorizes in law, in many instances, perhaps always, a presumption of malice, but it is a presumption that may be rebutted. And yet it is supposed that a trespass, shown to be wilful, upon an indictment under the Act of 1865 while in force, would have subjected the trespasser to the reprobation of that Act, although the absence of actual malice had been clearly proved. Malice is not an essential element of wilfulness. But under the Act of 1857, the shooting, &c., of another’s horse, &c., although wilfully done, could not constitute the offence described, if actual malice were negatived by the proof. “In law,” says Wardlaw, J., in the State v. Doig, 2 Rich. 179, “malice is a term of art importing wickedness, and excluding a just cause or excuse. It is implied from an unlawful act wilfully done, until the contrary he proved,” clearly importing that such act may be wilful without being actually malicious. In The Commonwealth vs. Waldron, (3 Cush. 558,) it was held that the word “maliciously,” in the statutory description of an offence, is not sufficiently defined “as the wilfully doing of any act pro- *254 kibited by law, and for which the defendant has no lawful excuse, but it means more,” which is equivalent to saying that an act may be unlawful that is “ prohibited by law,” and “ without lawful excuse,” and may be done “ wilfully ” and yet not be malicious in the sense of the law. In order to be malicious, it was said, in the same case, it must be done “out of a spirit of wanton cruelty or wicked revenge; ” while “ wil-fully ” imports something more of determination to execute one’s own will in spite and defiance of the law than “voluntarily” does — some “bad purpose” — it does not import so much of wickedness as “ maliciously ” does.
It will be observed that although the Act of 1857 is entitled “ An Act to make malicious trespasses indictable,” the word “trespass” does not occur in the body of the Act. An examination of the whole Act will make it clear, that the wrongdoing therein reprobated corresponds in its objects and in its elements of wickedness exactly to the offence severely rep-robated by various English statutes, (some of them of an early date and made of force here,) and denominated by Sir Wm. Blackstone and other commentatorsmalicious mischief.” “ This,” he says, “ is such as is done, not animo fu-randi, or with an intent of gaining by another’s.loss, which is some though a weak excuse, but either out of a spirit of wanton cruelty or black and diabolical revenge.” (4 Bl. Comm. 243.) In some of the States it has been held, that an act of wanton cruelty to a domestic animal, as for example maliciously killing a cow, is such a species of malicious mischief as constitutes a misdemeanor at common law. (Vide People vs. Smith, 5 Conn. 258.) The difference between a “wilful trespass,” which is a purely statutory offence, and such a misdemeanor, is well illustrated in Wait vs. Green, (5 Park. Cr. Rep. 185.)
There was then no such irreconcilable repugnance between the two statutes which have been now under examination, in their terms, as to compel an implication of a repeal of the *255 earlier of them by tbe later. They had separate orbits in which they moved without danger of collision —distinct fields of operation, the one more contracted in its extent than the other, and embraced, it may be, within the compass of the latter, but lying at a lower depth of infamy and guilt. While the Act of 1865 continued in force, every one who committed a wrong which constituted merely a " wilful trespass ” without more, might be indicted, and upon conviction punished under it. But if in addition to being a trespass' (which it would not be unless “ unlawful ”) and wilful,” it was the particular species of trespass described, as the " cutting, shooting, maiming, wounding or destroying another’s horse, mule, neat-cattle, hog, sheep or goat,” and was done “ maliciously ” also, then he had committed the more aggravated offence, and might be indicted and punished under the Act of 1857.
The defendant’s motions are dismissed.
Dunkin, C. J., and Wardlaw, A. J., concurred.

Motions dismissed.